871 F.2d 1149
 276 U.S.App.D.C. 409
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
DELMARVA POWER & LIGHT CO., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION.
 No. 88-1557.
 United States Court of Appeals, District of Columbia Circuit.
 March 15, 1989.
 
 Before WALD, Chief Judge, and STEPHEN F. WILLIAMS and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of orders of the Federal Energy Regulatory Commission and was briefed and argued by counsel. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that the petition for review is hereby denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 In this court's prior decision, Delmarva Power & Light Co. v. FERC, 770 F.2d 1131, 1140 (D.C.Cir.1985), we noted that FERC's instructions in its earlier orders were susceptible of three interpretations: the instructions could be read as (1) recognizing "the possibility that operation of the new facility might cause growth in customer load extensive enough to warrant attention in the allocation process"; (2) stating that "the addition of IR4 might cause load growth and that Delmarva should therefore include in its filing an estimate of load growth for the first year in which IR4 was expected to be in service"; or (3) requiring Delmarva "to supply actual data on load growth for IR4's first year in operation."
 
 
 5
 This court vacated FERC's summary affirmance of the ALJ and remanded to FERC on the ground that the ALJ imposed an across-the-board annualization rule that was both inconsistent with any of these interpretations of FERC's instructions and contrary to FERC's earlier statement that it had no per se rule against selective annualization. We observed that FERC was free, on remand, either to adopt such a per se rule, or to adhere to its previous policy but nonetheless disallow, along with an adequate and reasoned explanation, Delmarva's proposed annualization of IR4-related costs. In the case of Delmarva, FERC adopted the latter course.
 
 
 6
 In reassessing the record, FERC found that Delmarva had failed to "adjust billing demands to reflect anticipated load growth" over the extended period, and had not submitted evidence to show that either "no load growth [was] anticipated" or that any anticipated growth was unrelated to operation of the new plant. FERC further found that Delmarva had failed "to submit evidence regarding the impact of load growth on the allocation of [the IR4] costs and in the rate design process...."
 
 
 7
 These findings, if correct, indicate that Delmarva's evidentiary showing satisfied none of the three possible interpretations of FERC's instructions. Delmarva does not dispute that the load figures on which it based its proposed rate were derived entirely from data for the test year--i.e. calendar year 1980. If one thing is clear from FERC's original instructions, it is that Delmarva would have to make some showing with respect to load growth as between the test year and the first year of IR4's operation; even under the most lenient reading of those instructions, it would have to show that no load growth was likely to occur and that no adjustment was needed in the allocation process. Moreover, again assuming for the moment the accuracy of FERC's findings as to the contents of the record, it is clear that Delmarva complied with neither of the other possible readings, since it submitted neither estimated nor actual figures for load growth associated with operations at IR4.
 
 
 8
 Delmarva claims, however, that FERC inaccurately described its evidence. Specifically, it argues that (1) its evidence showed that recognition of load growth would only increase its revenue requirement; (2) the record "contains a comparison of the actual output from IR4 (during its first twelve months of commercial operation) to the estimates in Delmarva's test year"; and (3) the ALJ rejected its proffer of additional evidence regarding load growth.
 
 
 9
 As to Delmarva's first argument, even assuming the evidence showed that load growth recognition would increase Delmarva's wholesale revenue requirement, we cannot gainsay FERC's conclusions that (1) in light of possible fluctuations in billing determinants, an increased revenue requirement does not necessarily mean that the rate should not be lower; and (2) the "determination of whether a load growth adjustment is necessary or 'meaningful' is a determination that must be made by the Commission based upon record evidence."
 
 
 10
 Delmarva's second argument is similarly unpersuasive, since the portions of the record to which it cites do not support its claim. The cited pages contain estimates of load for the first full year of operations of IR4, as well as actual load figures for the same period, and do appear to show that actual load for the first operational year of IR4 was lower than expected. Delmarva points us to nothing in the record, however, that compares the load figures used in the calculation of its cost of service--i.e. the 1980 calendar year ("test year") figures--with either actual or anticipated load for the first year of operations. Thus there is no way to tell from the cited evidence whether the operation of IR4 would have any effect on the accuracy of the load figures actually used in calculating Delmarva's proposed rate increase.
 
 
 11
 Turning to Delmarva's third argument, the ALJ struck the proffered evidence from the record on the grounds that (1) the evidence related solely to Delmarva's "Phase II" rates--i.e. the rates it submitted in order to account for its share of Salem Generation Station Unit No. 2; and (2) the Phase II aspect of the proceeding had been rendered moot by an intervening tariff filed by Delmarva. Although the accuracy of the ALJ's evidentiary decision is not directly at issue here, our review of Delmarva's stricken evidence confirms that it was aimed at the Phase II rates--rates that are indisputably no longer at issue. Delmarva points to nothing in the record showing that it proffered, or that the ALJ rejected, load growth evidence specifically relating to the Phase I rates at issue here.
 
 
 12
 In its petition for rehearing and on this appeal, Delmarva suggests that the excluded Phase II load growth data would have supported its proposed Phase I rates, and claims that it failed specifically to earmark that data as pertaining to Phase I only because FERC did not announce the Phase I load growth requirement until it issued Order No. 262. FERC did not, however, limit the load growth instructions in its earlier remand orders to Phase II rates, and we therefore do not believe that Delmarva can legitimately claim unfair surprise in this regard.
 
 
 13
 Nor are we persuaded by Delmarva's next argument, which charges that FERC acted inconsistently by first questioning the accuracy of the calendar 1980 load figures in the course of denying the proposed annualization of IR4 costs, and then using those same 1980 figures in its own calculation of the final rate. FERC questioned the use of the calendar 1980 load figures only because using those calculations in conjunction with cost figures from a different time period might result in a mismatch. FERC's use of the calendar 1980 load figures matched against 1980 cost figures was thus entirely consistent with its earlier skepticism as to the former figures.
 
 
 14
 Finally, we cannot fault FERC for rejecting Delmarva's affidavit, submitted along with its rehearing petition, setting forth the required calculations. Delmarva does not dispute that the information set forth in the affidavit was available to it at the time of the hearing, as FERC suggested in its order denying rehearing, and thus FERC was well within its discretion in declining to reopen the record to accomodate Delmarva's untimely submission.
 
 
 15
 In conclusion, we find no merit in Delmarva's arguments urging reversal, and we therefore deny the petition for review.